WIGGINS, Justice.
A defendant brings a claim alleging his trial counsel provided ineffective assistance of counsel related to the defendant’s guilty plea to the crime of criminal transmission of the human immunodeficiency virus (HIV) in violation of Iowa Code section 709C.[1] (2007)! The district court disagreed and dismissed the defendant’s post-conviction relief action. The defendant appealed and we transferred the case to our court of appeals. The court of appeals affirmed. On further review, we find the guilty plea record did not contain a factual basis to support the plea. We also find the court in this case cannot use the rule of judicial notice to establish the factual basis in the guilty plea record. Based on the state of medicine both now and at the time of the plea in 2009, we are unable to take judicial notice that an infected individual can transmit HIV, regardless of an infected individual’s viral load, when that individual engages in protected anal or unprotected oral sex with an uninfected person. Accordingly, we vacate the decision of the court of appeals and reverse the judgment of the district court. We also remand the case with directions.
I. Background Facts and Proceedings.
The petitioner in this case, Nick Rhoades, was diagnosed with HIV in 1998. From 1999 to 2005, Rhoades did not receive treatment for his HIV diagnosis. In 2005, Rhoades began consistently receiving medical care for his HIV diagnosis from the University of Iowa Hospitals and Clinics. Every three to six months during this time, Rhoades received treatment. In the spring of 2008, Rhoades’s doctor informed him his HIV viral load was nondetectable.
The events of this case turn on- an encounter between Rhoades and A.P. on June 26, 2008. On that evening, Rhoades met A.P. on a social networking site. Rhoades and A.P. began conversing, and subsequently A.P. invited Rhoades to his home in Cedar Falls. Rhoades accepted. A.P. understood Rhoades to be HIV negative, in part because Rhoades’s online profile listed him as HIV negative.
In Cedar Falls, Rhoades and A.P. engaged in consensual unprotected oral and *26 protected anal sex. Several days later, A.P. learned Rhoades was potentially HIV positive. A.P. contacted the police, and subsequently the State charged Rhoades with criminal transmission of HIV in violation of Iowa Code section 709C.1.
Rhoades engaged the services of an attorney to defend him in this criminal matter. This was the attorney’s first case involving Iowa Code section 709C.1. On May 1, 2009, Rhoades pled guilty to one count of criminal transmission of HIV. The district court accepted the plea. At the sentencing hearing, the district court sentenced Rhoades to a term of imprisonment not to exceed twenty-five years with life parole and required Rhoades be placed on the sex offender registry. The district court retained jurisdiction. Rhoades filed a motion to reconsider the sentence. On September 11, the district court suspended Rhoades’s twenty-five year sentence and placed Rhoades on probation for five years. Rhoades did not file a direct appeal.
On March 15, 2010, Rhoades filed an application for postconviction relief pursuant to Iowa Code chapter 822. Rhoades alleged his trial counsel was ineffective for allowing Rhoades to plead guilty by failing to challenge the factual basis of the plea and failing to complete a proper investigation before the plea hearing. ' The district court denied Rhoades’s application for postconviction relief. Rhoades appealed and we transferred the case to our court of appeals. The court of appeals affirmed. Rhoades requested further review, which we granted.
II.Issue.
We must determine if Rhoades received ineffective assistance of counsel when he pled guilty to criminal transmission of HIV in violation of Iowa Code section 709C.1.
III. Standard of Review.
 Ineffeetive-assistance-of-counsel claims are grounded in the Sixth Amendment. State v. Clay, 824 N.W.2d 488, 494 (Iowa 2012). We review ineffective-assistance-of-counsel claims de novo. Id. We review issues of statutory interpretation for correction of errors at law. State v. Wills, 696 N.W.2d 20, 22 (Iowa 2005).
IV. Elements of the Crime of Criminal Transmission of HIV.
The legislature codified the crime of criminal transmission of HIV in Iowa Code section 709C.1. The Code provides in relevant part:
1. A person commits criminal transmission of the human immunodeficiency virus if the person, knowing that the person’s human immunodeficiency virus status is positive, does any of the following:
a. Engages in intimate contact with another person.
[[Image here]]
2. For the purposes of this section:
a. “Human immunodeficiency virus ” means the human immunodeficiency virus identified as the causative agent of acquired immune deficiency syndrome.
b. “Intimate contact ” means the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus.
[[Image here]]
4. This section shall not be construed to require that an infection with the human immunodeficiency virus has occurred for a person to have committed criminal transmission of the human immunodeficiency virus.
*27 5. It is an affirmative defense that the person exposed to the human immunodeficiency virus knew that the infected person had a positive human immunodeficiency virus status at the time of the action of exposure, knew that the action of exposure could result in transmission of the human immunodeficiency virus, and consented to the action of exposure with that knowledge.
Iowa Code § 709C.1. Therefore, to establish the crime of criminal transmission of HIV the State must prove the following elements: (1) “the defendant engaged in intimate contact with [the victim]”, (2) at the time of intimate contact the defendant’s HIV status was positive, (B) the defendant knew his HIV status was positive, and (4) “[a]t the time of the intimate contact, [the victim] did not know that the defendant had a positive HIV status.” State v. Stevens, 719 N.W.2d 547, 549 (Iowa 2006). It is also incumbent on the district court to instruct the jury on the definition of “intimate contact” because the legislature has specially defined this phrase in the Iowa Code. See id. (recognizing the jury instruction also defined intimate contact to mirror the statutory definition). For purposes of section 709C.1, intimate contact requires “(1) there was an intentional exposure of the body of one person to a bodily fluid of another person, and (2) this occurred in a manner that could result in the transmission of ... HIV.” Id. at 550.
In considering the definition of “intimate contact,” we have previously defined “could” in the criminal transmission statute as requiring “that transmission of ... HIV from the infected person to the exposed person was possible considering the circumstances.” State v. Keene, 629 N.W.2d 360, 365 (Iowa 2001). Although there are multiple definitions of “possible,” we have not previously elaborated on what “possible” means here. First, “possible” may mean something “that may or may not occur.” Webster’s Third New International Dictionary 1771 (unabr. ed.2002). This definition is broad, and some courts have recognized the word “possible” in certain contexts may mean allowing any likelihood of occurrence, no matter how remote. See Pittsburgh, Cincinnati Chi. & St. Louis Ry. v. Indianapolis, Columbus, & S. Traction Co., 169 Ind. 634, 81 N.E. 487, 488 (1907) (recognizing a distinction between the word “practicable,” which requires reasonableness, and the word “possible”); Gustafson v. Benda, 661 S.W.2d 29, 31 (Mo.Ct.App.1982) (“ ‘Possible’ encompasses the entire range of probability from highly improbable to almost sure....”), rev’d on other grounds, 661 S.W.2d 11 (Mo.1983).
Second, “possible” may mean “having an indicated potential by nature or circumstances.” Webster’s Third New International Dictionary 1771. This definition considers the reality of a thing occurring, rather than a theoretical chance. In Keene, we linked possibility to the circumstances present. See Keene, 629 N.W.2d at 365. We find useful this commentary by the Eleventh Circuit Court of Appeals:
The potential for legal liability must be reasonable, not merely theoretical. In considering possible state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.
Legg v. Wyeth, 428 F.3d 1317, 1325 n. 5 (11th Cir.2005) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Some courts have recognized an inherent reasonableness consideration in construing the meaning of “possible” in the context of certain statutes. See Topeka *28 City Ry. v. Higgs, 38 Kan. 375, 16 P. 667, 674 (1888) (recognizing the word “possible” meant capable of being done, among other definitions, yet determining in the context of the statute the phrase required reasonable precautions); Sullivan v. Mountain States Power Co., 139 Or. 282, 9 P.2d 1038, 1047 (1932) (determining the statutory language “every possible effort” did not require actions that were neither reasonable nor practicable); Commonwealth v. Allied Bldg. Credits, Inc., 385 Pa. 370, 123 A.2d 686, 691 (1956) (recognizing the definition of “possible” meant capable of happening as contrasted with impossibility, however finding within the context of the statute the word carried a notion of reasonableness).
We find the second definition is more appropriate in the context of this criminal statute for at least two reasons. First, we recognize this statute requires expert medical testimony on the likelihood of transmission of HIV. Experts are not required to testify in absolutes when it comes to causation. See Bradshaw v. Iowa Methodist Hosp., 251 Iowa 375, 383, 101 N.W.2d 167, 172 (1960) (recognizing expert opinions were admissible when the expert was giving testimony that a causal relation was possible, likely, or probable).
Second, and more importantly, we would not want to deprive a person of his or her liberty on the basis the defendant’s actions caused something that can only theoretically occur. Causation must be reasonably possible under the facts and circumstances of the case to convict a person of criminal transmission of HIV in violation of Iowa Code section 709C.1.
Thus, to establish a factual basis for Rhoades’s guilty plea, the record must establish the four elements of the crime together with the two requirements of the statutory definition of intimate contact.
V. Attacking a Guilty Plea.
 We have recognized at least two ways a defendant may attack his or her guilty plea. First, a defendant may attack his or her guilty plea on the ground the defendant did not receive effective assistance of counsel as required under the Sixth Amendment to the United States Constitution because there was no factual basis to support the defendant’s guilty plea. See State v. Finney, 834 N.W.2d 46, 54 (Iowa 2013). Second, a defendant may show he or she did not make a knowing and intelligent waiver of a constitutional right when pleading, even if overwhelming evidence shows a factual basis exists. Id. at 55. Failure to make a knowing and intelligent waiver of a constitutional right violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Id. at 55.
In this proceeding, Rhoades bases his attack on his guilty plea under the Sixth Amendment by claiming ineffective assistance of counsel. We can parse his argument into two claims. The first claim of ineffective assistance of counsel alleged is that his trial counsel allowed Rhoades to plead guilty when no factual basis existed for the plea and then counsel failed to subsequently file a motion in arrest of judgment. The second claim of ineffective assistance of counsel alleged is that his trial counsel failed to complete a competent investigation before Rhoades pled guilty. We can dispose of this appeal on Rhoades’s factual basis claim.
A defendant must prove by a preponderance of evidence “(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice” in order to establish an ineffective-assistance-of-counsel claim. State v. Straw, 709 N.W.2d 128, 133 (Iowa 2006) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 *29 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). If trial counsel permits a defendant to plead guilty and waives the defendant’s right to file a motion in arrest of judgment when there is no factual basis to support the defendant’s guilty plea, trial counsel breaches an essential duty. State v. Philo, 697 N.W.2d 481, 485 (Iowa 2005). It is well-settled law that under these circumstances, we presume prejudice. State v. Schminkey, 597 N.W.2d 785, 788 (Iowa 1999). At the time of the guilty plea, the record must disclose facts to satisfy all elements of the offense. Keene, 629 N.W.2d at 366. We review (1) the prosecutor’s statements, (2) the defendant’s statements, (3) the minutes of testimony, and (4) the presentence report, if available at the time of the plea, to determine if the record supports a factual basis for the plea. State v. Ortiz, 789 N.W.2d 761, 768 (Iowa 2010). We have also allowed the court to take judicial notice of well-known facts to establish a factual basis. See Keene, 629 N.W.2d at 366. When analyzing the record, we do not require the record “to show the totality of evidence necessary to support a guilty conviction,” but only that the record demonstrates the facts to support the elements of the offense. Ortiz, 789 N.W.2d at 768.
VI. Analysis.
In deciding this case, we first look to the prosecutor’s statements at the plea hearing. The prosecutor made no statements at the plea hearing that contributed to establishing the factual basis. When the district court asked if the prosecutor requested any further factual basis, the prosecutor responded, “No, Your Honor.”
Next, we consider the defendant’s statements. The colloquy that took place between the district eourt and Rhoades was as follows:
THE COURT: What the state would have to prove is that on or about June 26th of 2008, here in Black Hawk County, Iowa, you did knowing that you had human — and I — I apologize. Have a hard time saying the word — immunodeficiency virus, that you knew that you had that, that you were positive for that and that you engaged in intimate contact with another person and you didn’t acknowledge or that person didn’t know that you had the virus.
Do you understand what it is you would — the state would have to prove?
THE DEFENDANT: Ido.
THE COURT: Were you here in Black Hawk County on June 26th?
THE DEFENDANT: I was.
THE COURT: And at that time were you positive for the human immunodeficiency virus?
THE DEFENDANT: Yes, sir.
THE COURT: You were aware of that?
THE DEFENDANT: Yes, sir.
THE COURT: And did you engage in intimate contact with another person?
THE DEFENDANT: Yes, sir.
THE COURT: And did that person not know that you had this virus?
THE DEFENDANT: No, sir.
THE COURT: Can the court rely upon the minutes for a factual basis, state?
MS. FANGMAN: Yes, Your Honor.
[[Image here]]
THE COURT: Can the court rely upon the minutes, [defense counsel’s name]?
[DEFENSE COUNSEL]: Yes, sir.
This colloquy establishes the factual basis for the elements that Rhoades was aware his HIV status was positive and at the time of his sexual encounter with *30 A.P., A.P. was not aware of his HIV status. We find the colloquy does not establish the facts necessary for the intimate-contact element. It is true the district court informed Rhoades the crime required intimate contact and when the district court asked if he had intimate contact, Rhoades answered in the affirmative. However, intimate contact under the statute has a specific meaning. “ ‘Intimate contact’ means the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus.” Iowa Code § 709C.1(2)(6).
In a previous case, we considered whether a plea colloquy between the district court and the defendant established a factual basis. See Ryan v. Iowa State Penitentiary, 218 N.W.2d 616, 618 (Iowa 1974). The colloquy was as follows:
THE COURT: You have told me that you are entering a plea of guilty because you, in fact, did what it charged you here in the county attorney’s information?
DEFENDANT: Yes, Your Honor.
Id. In finding this inquiry did not establish a factual basis, we stated:
[The county attorney information] was necessarily couched in the technical language of the criminal statute. Formal criminal accusations almost of necessity include verbiage which might be expected to confound and confuse one unaccustomed to legal parlance. There was no sufficient showing of a factual basis.
Id. at 619.
Here, as in Ryan, the district court used technical language from the statute that was insufficient to establish a factual basis. The district court asked Rhoades if he had intimate contact with the victim. At most, we can surmise from Rhoades’s affirmative response that he had some sort of sexual relations with the victim. See Webster’s Third New International Dictionary 1184 (defining “intimate” as “engaged in or marked by sexual relations”). Although we do not require a detailed factual basis, we do require the defendant to acknowledge facts that are consistent with the elements of the crime. See State v. Taylor, 211 N.W.2d 264, 265 (Iowa 1973) (showing the district court asked the defendant to explain his actions supporting the crime of larceny in the night time and the defendant responded he “took money from the Skelly Station.”); State v. Quinn, 197 N.W.2d 624, 625 (Iowa 1972) (showing a factual basis for the crime of larceny when, among other evidence, the defendant stated, “I just broke into the place I guess.”). On the other hand, the district court’s reading of the technical terms in the information and having the defendant agree to those terms is not enough to establish a factual basis for those terms. See Ryan, 218 N.W.2d at 619; see also United States v. Cody, 438 F.2d 287, 289 (8th Cir.1971) (“The government’s argument that [a factual basis] was fulfilled by the prosecutor reading from the indictment in the presence of the defendant falls far short of demonstrating any factual basis for the defendant’s plea.”).
We find the district court’s reference to intimate contact and Rhoades’s acknowl-edgement he had intimate contact does not establish the necessary factual basis an exchange of bodily fluid took place or that Rhoades intentionally exposed A.P. to his bodily fluid in a manner that could result in the transmission of HIV.
We next look to the minutes of testimony to see if a factual basis exists to establish Rhoades intentionally exposed A.P. to his bodily fluid in a manner that could result in the transmission of HIV. The minutes of testimony incorporate the *31 police reports prepared by the sheriffs department, which included A.P.’s statements. The minutes of testimony establish A.P. received oral and anal intercourse from Rhoades.[2] It also establishes Rhoades used a condom when performing anal sex. The minutes of testimony do not establish any exposure of bodily fluids between Rhoades and A.P. Thus, the minutes of testimony do not establish a factual basis that an exchange of bodily fluid took place or that Rhoades intentionally exposed A.P. to his bodily fluid. Nor do the minutes of testimony show the likelihood the sexual activity in this case could result in the transmission of HIV.
Next, we consider the presentence investigation report. The report states Rhoades admitted he engaged in consensual intercourse with A.P., and A.P. reported receiving unprotected oral sex and protected anal sex. The presentence investigation report contains the same information contained in the police reports, and similarly does not establish a factual basis.
The last place we look to see if a factual basis exists is by judicial notice of adjudicative facts. An adjudicative fact is “[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.” Black’s Law Dictionary 669 (9th ed.2009). Under Iowa Rule of Evidence 5.201, a court may take judicial notice of two kinds of adjudicative facts. First, the court may take judicial notice of a fact “generally known within the territorial jurisdiction of the trial court.” Iowa R. Evid. 5.201(6). Second, the court may take judicial notice of a fact that is “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Id.
Iowa Rule of Evidence 5.201 is nearly identical to the Federal Rule of Evidence 201. See Fed.R.Evid. 201. The advisory committee notes to the Federal Rule state “[ajdjudicative facts are simply the facts of the particular case” and “[a] high degree of indisputability is the essential prerequisite.” Fed.R.Evid. 201 advisory committee’s note to subdivision (a). Adjudicative facts concern the immediate parties, including “who did what, where, when, how, and with what motive or intent.... ” Kenneth Culp Davis, Judicial Notice, 55 Co-lum. L. Rev. 945, 952 (1955). Evidence must support adjudicative facts. Id. We have previously recognized adjudicative facts are limited to a particular proceeding. See Greenwood Manor v. Iowa Dep’t of Pub. Health, 641 N.W.2d 823, 836 (Iowa 2002) (“Adjudicative facts relate to the specific parties and their particular circumstances”).
We recognize judicial notice of an adjudicative fact in a prior proceeding does not automatically apply to a future proceeding. Rather, a court must take judicial notice of the adjudicative fact and recognize the same principles that supported the judicial notice in the prior case support judicial notice in the present case. See State v. Musser, 721 N.W.2d 734, 747 (Iowa 2006) (recognizing we were again taking judicial notice of a fact we had taken notice of in Keene).
In Keene, the district court recognized a factual basis existed to support a defendant’s conviction of criminal transmission of HIV based on the minutes of testimony and the defendant’s statements made dur *32 ing the plea colloquy. 629 N.W.2d at 862. The minutes of testimony indicated the victim and the defendant engaged in consensual, unprotected sexual intercourse and the victim was unaware of the defendant’s HIV status. Id. Both the victim and the defendant were uncertain if the defendant ejaculated during sexual intercourse, however the defendant admitted that if he did ejaculate he did so only on either his or the victim’s stomach. Id. at 362-68. The minutes of testimony also indicated a public health nurse would testify to the risk of exposure of HIV during sexual contact. Id. at 363.
At the plea colloquy, the defendant stated all witnesses would be truthful if they testified according to the minutes of testimony. Id. He further admitted he knew he was HIV positive when he engaged in sexual intercourse with the victim. Id. The district court found a factual basis for the crime. Id.
On appeal, the defendant argued there was not a factual basis to show how sexual intercourse between he and the victim could result in the transmission of HIV. Id. at 366. We disagreed. See id. at 367. We determined the minutes of testimony, the defendant’s admissions during the plea colloquy, and our recognition of the “fact that ... HIV may be transmitted through contact with an infected individual’s blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus” established the factual basis for the crime. Id. at 365-66. Accordingly, we found the defendant’s ineffective-assistance-of-counsel claim lacked merit. Id. at 367. Our judicial notice of the adjudicative facts that HIV may be transmitted through contact with an infected individual’s blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus filled in the gaps in the factual basis for Keene’s plea.
Keene committed his crime in 1998. Id. at 362. In 2003, we again recognized the adjudicative “ ‘fact that ... HIV may be transmitted through contact with an infected individual’s blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus’ ” continued to be common knowledge to establish the evidence was sufficient to support a conviction under section 709C.1.[3] Stevens, 719 N.W.2d at 550-52 (quoting Keene, 629 N.W.2d at 365).
Today we are unable to take judicial notice that an infected individual can transmit HIV when an infected person engages in protected anal sex with another person or unprotected oral sex, regardless of the infected person’s viral load. The evidence at the postconviction relief hearing[4] shows there have been great strides in the treatment and the prevention of the spread of HIV from 2003 to 2008. It was not apparent in 2009, at the time of the plea, that this fact was “capable of accurate and ready determination by resort to sources whose accuracy” could not reasonably be questioned. See Iowa R. Evid. 5.201(6). Further, while this fact may have been a commonly held belief within *33 the territorial jurisdiction of the trial court, we note the purpose of judicial notice is to show the fact is not subject to reasonable dispute. See id. Here, we find the fact was subject to reasonable dispute. At the time of the plea, Rhoades’s viral count was nondetectable, and there is a question of whether it was medically true a person with a nondetectable viral load could transmit HIV through contact with the person’s blood, semen or vaginal fluid or whether transmission was merely theoretical. The judicial notice we took in previous cases is subject to reasonable dispute here; thus, it is improper for us to similarly take judicial notice in this case. With the advancements in medicine regarding HIV between 2003 and 2008, we are unable to take judicial notice of the fact that HIV may be transmitted through contact with an infected individual’s blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus to fill in the gaps to find a factual basis for Rhoades’s guilty plea.
Thus, there was not a sufficient factual basis for the district court to accept the plea. Therefore, trial counsel was ineffective for allowing the district court to accept the plea without a factual basis.
VII. Disposition.
We vacate the decision of the court of appeals and reverse the judgment of the district court. We remand the case back to the district court to enter judgment finding trial counsel was ineffective. The district court shall order the sentence in Rhoades’s criminal case be set aside. Because it is possible the State can establish a factual basis, the district court should order the court in the criminal case to give the State the opportunity to establish a factual basis. State v. Gines, 844 N.W.2d 487, 441 (Iowa 2014); Ryan, 218 N.W.2d at 620. The district court should further order if the State cannot establish a factual basis, the plea is withdrawn and the State can proceed accordingly. Gines, 844 N.W.2d at 442.
DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH DIRECTIONS.
All justices concur except MANSFIELD and WATERMAN, JJ., who concur specially, and ZAGER, J., who dissents.

. The general assembly repealed Iowa Code chapter 709C, and replaced it with new legislation. See 2014 Iowa Legis. Serv. S.F. 2297 (West). The governor signed the bill, and it was effective May 30, 2014. Id. § 11.

. In the postconviction relief hearing, A.P. testified he performed oral sex on Rhoades. However, this statement is outside the record of the guilty plea. Thus, we do not consider this fact in evaluating the factual basis for the guilty plea.

. We also used this fact as one of the reasons Iowa Code section 709C.1 was not void for vagueness under the Due Process Clause of the Fourteenth Amendment. Musser, 721 N.W.2d at 745-47.

. While we are limited in our review for factual basis to the record before the district court, we are not so limited in our review for an inquiry into whether we will take judicial notice. Rather, we may look to either what was "generally known within the territorial jurisdiction of the trial court" or if the fact was “capable of accurate and ready determination by resort to sources whose accuracy” could not reasonably be questioned. Iowa R. Evid. 5.201(6).