# IN THE COURT OF APPEALS OF IOWA

No. 13-1143
Filed August 27, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES ANTHONY GALBO,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.


        James Anthony Galbo appeals from the judgment and sentence entered following a jury verdict finding him guilty of first-degree arson.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and James P. Ward, Assistant County Attorney, for appellee.


        Considered by Vaitheswaran, P.J., Doyle, J., and Miller, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MILLER, S.J.**

James Anthony Galbo appeals from the judgment and sentence entered following a jury verdict finding him guilty of first-degree arson, in violation of Iowa Code sections 712.1 and 712.2A (2011). He contends his trial counsel was ineffective in failing to move to exclude fingerprint evidence. He also challenges the sufficiency of the evidence to prove his guilt.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

Pastor David Reasby had owned the Lighthouse Baptist Church in Des Moines for approximately twenty-five years when a fire destroyed the building on August 24, 2012. In addition to hosting church services, Reasby used the building to provide hot meals and short-term shelter to homeless persons. In exchange for lodging, those who stayed at the church were expected to volunteer to serve meals and do other work around the church.

In 2011, the City of Des Moines had filed for an injunction to stop the church from being used as a homeless shelter, but had taken no other action. At the time of the fire, Reasby was in arrears on utility and mortgage payments, and the insurance on the building had lapsed. Reasby claimed he was planning to sell the church to another minister.

The facts viewed in the light most favorable to the verdict show Galbo had been staying at the church in the days leading up to the fire. On the day of the fire, he had accepted a food delivery there and had been observed on the property by several people. Ten minutes before the fire was set, Galbo told another resident, Sandy Hainline, to get out of the church because "something

was going to go down." Three hours before the fire, he also told a former resident of the church, Barbara Brooks, "I'm going to burn down the church." He made a similar statement to Juan Segovia on the day of the fire.

Galbo claimed he left the church after seeing a flash and hearing two bangs. He stated he put his backpack and a garbage bag containing his belongings in an alley near a QuickTrip convenience store. Those items were later recovered inside the QuickTrip. Steve Howell, who had been getting the oil in his vehicle changed that afternoon, saw Galbo walk up the alley toward the QuickTrip with a plastic bag in his hand. Howell recalled hearing a commotion and seeing a fire in the church minutes later. When Galbo walked back toward the church, Howell described him as "getting a big kick out of the fire," stating he used to live at the church and asking to have his picture taken. Galbo told Howell he had been inside the church when he heard a candle fall and got out. Galbo further stated to Howell that he was "glad" the church was burning because he didn't like Reasby.

After an investigation, it was determined the fire started in the southwest corner of the sanctuary—where Galbo reportedly slept—and was intentionally set. Although, investigators did not discover an accelerant at the scene, the amount of water used to extinguish the fire likely would have washed away any traces.

A new-appearing lighter-fluid can was discovered in the alley, and a partial fingerprint from the can was matched to Galbo. Four hours after the fire began, a medic discovered a military-style water or fuel jug flowing down the stream of

water pouring out of the church in the wake of the fire department's efforts to extinguish the fire. The container held gasoline.

When Des Moines Police Officer David Murillo responded to the fire, he observed Galbo standing on the sidewalk along the church and placed him in custody. While being interviewed by detectives, Galbo made disparaging statements about Reasby's character and claimed everyone in the neighborhood wanted to burn the church down. He further claimed he had seen Reasby with a can of lighter fluid and candles, and that he smelled the odor of gas or kerosene. Although Galbo's clothing was collected, it was not tested.

On October 2, 2012, Galbo was charged with first-degree arson. He was found guilty at the conclusion of his May 2013 trial and was sentenced to an term of incarceration of no more than twenty-five years. Galbo has appealed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

Galbo first contends his trial counsel was ineffective in failing to move to exclude the fingerprint evidence. He argues counsel had a duty to move to exclude the evidence on the basis it does not meet the criteria articulated by the Supreme Court in *Daubert v. Merrell Dow*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). He also argues the evidence was both irrelevant and unfairly prejudicial.

We review ineffective assistance of counsel claims de novo. *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). Although we normally preserve such claims for postconviction-relief proceedings, we will address them on direct

appeal when the record is sufficient to permit a ruling. *Id.* Here, both Galbo and the State concede the issue can be addressed on direct appeal.

In order to succeed on such a claim, a defendant must prove counsel failed to perform an essential duty and prejudice resulted. *Rhoades v. State*, 848 N.W.2d 22, 28 (Iowa 2014). Galbo must prove both by a preponderance of the evidence. *State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). We need not determine whether counsel's performance was deficient before examining the prejudice component of an ineffective-assistance claim. *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). Because we find the prejudice component is dispositive, we do not address the adequacy of counsel's performance.

*Daubert* sets forth the following factors to be considered when determining if expert testimony is admissible: "(1) whether the theory or technique is scientific knowledge that can and has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error, or (4) whether it is generally accepted within the relevant scientific community." *Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 533 (Iowa 1999) (citing *Daubert*, 509 U.S. at 593-94, 113 S. Ct. at 2797, 125 L. Ed. 2d at 483). Our supreme court held that while the use of these factors may be helpful to the trial court in assessing the reliability of expert testimony, it is not required. *Id.* at 532-33. Rather, the only requirements for admitting expert testimony in Iowa are as follows: (1) the expert testimony must be relevant, (2) the testimony must be in the form of "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in

issue," and (3) the expert must be "qualified as an expert by knowledge, skill, experience, training, or education." *Id.*; *see also* Iowa Rs. Evid. 5.402, 5.702.

The record sufficiently establishes the requirements for admissibility have been shown. Although Galbo argues the fingerprint evidence found on a can of lighter fluid was not relevant because there is no evidence to support the allegation an accelerant was used, Galbo himself stated to law enforcement that he had seen Reasby with a can of lighter fluid on the day of the fire and smelled something like gas or kerosene. Des Moines Police Investigator Tim Briggs's testimony regarding the fingerprint evidence was in the form of scientific or technical knowledge that would assist the jury in understanding the evidence or determining a fact in issue. Finally, there is ample evidence that Briggs—who had been the latent fingerprint examiner for the Des Moines Police Department for seventeen years at the time of trial and who has taken numerous course on fingerprinting from the FBI, DCI, and Secret Service—is qualified as an expert by virtue of his experience and training.

Galbo argues the State failed to establish that the fingerprinting technique employed in this case is sufficiently reliable. He notes that during cross-examination, Briggs did not know of any peer-reviewed study or publication that validates the technique used, did not have a methodology to calculate his error rate, and did not employ a blind verification process to ensure the accuracy of the results. These points go to the weight of Briggs's testimony, not its admissibility. *Cf. Williams v. Hedican*, 561 N.W.2d 817, 827, 830 (Iowa 1997) (noting the lack

of statistical proof concerning a drug's effectiveness for treating a condition goes to the weight of an expert's testimony and not to its admissibility).

Because the fingerprint evidence was admissible, Galbo cannot show he was prejudiced by counsel's failure to move to exclude it. Therefore, his ineffective-assistance claim fails.

### III. SUFFICIENCY OF THE EVIDENCE.

Galbo also contends there was insufficient evidence by which the jury could find him guilty of first-degree arson. We review such claims for correction of errors at law. *See State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). We consider the evidence, including all reasonable inferences that may be fairly drawn from it, in the light most favorable to the State. *Id.* at 439-40. We uphold a verdict if substantial evidence in the record supports it. *Id.* at 440.

The evidence supports the jury's verdict. Galbo told several individuals of his plan to set fire to the church on the day the fire occurred. He was seen on the property just before the fire began, admits being inside the church when it started, and was spotted walking away from the church minutes before the blaze became visible and emergency vehicles responded. Galbo seemed joyful over the fire and expressed his dislike of Reasby, who owned the property. His fingerprints were found on a lighter-fluid can—a potential accelerant—that was located near the church after the fire began. The investigation determined that the fire began in the area where Galbo had been sleeping. However, Galbo had removed his belongings from the building before they could be damaged.

The main thrust of Galbo's argument is that several witnesses and other evidence connecting him to the crime are not credible. However, credibility is a matter for the factfinder to decide except those rare circumstances where a witness's testimony is absurd, impossible, or self-contradictory. *State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa 2011). None of the evidence complained of approaches the level required for it to be disregarded. We will not "usurp the role of a jury by making credibility determinations that are outside the proper scope of the judicial role." *State v. Paredes*, 775 N.W.2d 554, 567 (Iowa 2009). While some evidence may bring suspicion on another individual, the jury decides the weight the evidence receives and is free to accept or reject any or all of it. *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). Galbo also notes there is no eyewitness to the crime. However, circumstantial evidence is equally probative for the purposes of proving guilt beyond a reasonable doubt. *See State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008). Here, there is substantial evidence of Galbo's guilt. Accordingly, we affirm.

**AFFIRMED.**