# IN THE COURT OF APPEALS OF IOWA

No. 14-0003
Filed April 22, 2015

**VERNON SCOTT HAGANS,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,

Judge.

Vernon Hagans appeals from the denial of his application for

postconviction relief. **AFFIRMED.**

Randall L. Jackson of Law Office of Randall L. Jackson, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney

General, John P. Sarcone, County Attorney, and James P. Ward, Assistant

County Attorney, for appellee State.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

In file number FECR229226, Vernon Hagans and Donica Gonzales were charged by trial information with several thefts and acts of identity theft. Specifically, Hagans was charged with four counts of second-degree theft (all class "D" felonies), four counts of identity theft (all class "D" felonies), one count of third-degree theft (an aggravated misdemeanor); and one count of identity theft (an aggravated misdemeanor). The acts concerning the pair occurred on various dates in late 2008 and early 2009 at the Veridian Credit Union and the Greater Iowa Community Credit Union. In a separate file, number FECR228077, Hagans was charged with second-degree robbery (a class "C" felony). This charge related to Hagans's robbery of the Federal Employees Credit Union.

Trial was set for August 31, 2009, on the robbery charge. Trial was set for September 21, 2009, on the theft charges. On August 28, 2009, Vernon Hagans pled guilty to one count of first-degree theft in FECR228077, and to four counts of second-degree theft, and one count of forgery in FECR229226. Prior to accepting his guilty plea, the district court conducted a detailed colloquy with Hagans to determine his plea was made voluntarily and knowingly, and it found Hagans was "acting voluntarily in both of these felony cases, that he understands his rights, [and] he understands the consequences of pleading guilty."

On August 27, 2012, Hagans filed an application for postconviction relief (PCR), asserting numerous claims of ineffective assistance of trial counsel concerning his counsel's representation leading up to and shortly after the entry of his guilty plea. Following a PCR trial, the court entered its ruling denying Hagans's PCR application. The court found:

> The record establishes that [Hagans's] guilty plea was voluntary and intelligent. [He] does not claim that [the Iowa Rules of Criminal Procedure were] not followed, and in fact there is no showing to support his various claims. [Hagans] was fully advised of his rights by the court prior to pleading guilty; he clearly understood the rights he was waiving, and he voluntarily pled guilty. And his various allegations, without support, cannot form the basis to grant [PCR].

Hagans now appeals, asserting the PCR court erred in not finding his trial counsel rendered ineffective assistance to him.

Ineffective-assistance-of-counsel claims are analyzed under the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014). Specifically, to succeed on his ineffective-assistance-of-counsel claims, Hagans must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure. *Dempsey v. State*, ___ N.W.2d ___, 2015 WL 1086220, at *6 (Iowa 2015). Our review is de novo. *See Rhoades v. State*, 848 N.W.2d 22, 26 (Iowa 2014).

"Generally, a criminal defendant waives all defenses and objections to the criminal proceedings by pleading guilty, including claims of ineffective assistance of counsel." *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). However, an exception exists where it can be shown "that the pre-plea ineffective assistance of counsel rendered the plea involuntary or unintelligent." *Id.* at 793. Stated another way, if

> a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

*State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011) (citation and quotation marks omitted). If a guilty plea is properly challenged, "a case-by-case analysis is necessary to determine whether counsel in a particular case breached a duty in advance of a guilty plea, and whether any such breach rendered the defendant's plea unintelligent or involuntary." *Castro*, 795 N.W.2d at 793 (internal citation and quotation marks omitted).

On appeal, Hagans asserts the PCR court erred in not finding his trial counsel was ineffective (1) for giving him bad advice regarding an unlisted witness's testimony, (2) in failing to communicate with him, and (3) in failing to investigate fully the claims against him. Hagans maintains that, but for his counsel's alleged ineffectiveness, he would not have entered into the guilty plea. The State points out that Hagans did not explicitly advance the last part of his claim—that he would not have entered a guilty plea but for his counsel's errors—before the PCR court. Additionally, the State argues Hagans did not preserve his ineffective-assistance-of-counsel claim concerning the unlisted witness's testimony because he did not raise it before the PCR court, and it notes Hagans failed to include in his brief the necessary statement explaining how error was preserved. *See* Iowa R. App. P. 6.903(2)(g)(1). Assuming without deciding Hagans's claims were preserved, we conclude he has failed to establish the requisite prejudice.

During his PCR hearing, Hagans testified his trial counsel advised him his codefendant, Donica Gonzales, was going to testify against him. He testified "a lot of the stuff" through which he was led by trial counsel during the factual basis portion of his plea came from Gonzales, who was not listed as a witness in the

minutes of testimony or the court records for either file. On appeal, he argues that "[f]ailure to list said witness and provide advance notice *could have resulted* in said witness being precluded from testifying pursuant to Iowa Rule of Criminal Procedure 2.19(2) [and] (3)." (Emphasis added.) Based upon his presumption that Gonzales could not be called to testify, Hagans claims that his trial attorney should have advised him of this and that he "would not have entered the guilty plea resulting from information from Ms. Gonzales." His presumption does not hold water.

As to the theft charges, Hagans's guilty plea was entered a month prior to the date that case was set for trial. Additional witnesses in support of the trial information may be presented by the prosecuting attorney if the prosecuting attorney has given defense counsel minutes of testimony of such witness's evidence at least ten days before commencement of the trial. Iowa R. Crim. P. 2.19(2). Consequently, there was adequate time for the State to give Hagans notice of Gonzales as a witness. There is no reason to believe the State would not have given timely notice. Furthermore, Hagans has provided no evidence or argument to support his presumption that the State could not have given timely notice of its intent to call Gonzales as a witness in the theft case. We therefore find no merit in Hagans's Rule 2.19 claim as it relates to his guilty plea to the theft charges.

As to the robbery charge, Hagans pled guilty three days before the trial was to begin. It is not clear as to whether the State would have even called Gonzales as a witness in this case. The minutes of testimony do not mention Gonzales. Hagans does not point us to anything in the record to show if "the

information" from Gonzales was related in any way to the robbery prosecution. Nor does he point us to any information from Gonzales that he now claims led to his guilty plea in the robbery case. That having been said, the record does not show that Gonzales's testimony would necessarily have been barred had counsel objected. Noncompliance with the notice requirements of Iowa Rule of Criminal Procedure 2.19(2) does not, in all instances, require exclusion of the testimony of the witness. *See State v. LeGrand*, 501 N.W.2d 59, 62 (Iowa Ct. App. 1993) (examining Iowa R. Crim. P. 18(3), now renumbered 2.19(3)). Iowa Rule of Criminal Procedure 2.19(3) permits exclusion of a witness' testimony only as a last resort. Less severe remedies are available. A court can order the State to "permit discovery of the witness, grant a continuance, or enter such order as it deems just under the circumstances." *Id.* The trial court could have granted Hagans's counsel an opportunity to interview or depose Gonzales. Additionally, the speedy trial deadline in this case would not have run until early October 2009. *See* Iowa R. Crim P. 2.33(1)(b). If the case was continued, there was adequate time to allow for notice of Gonzales and her expected testimony. We find no merit to Hagans's rule 2.19 claim as it relates to his guilty plea to the robbery charge.

Hagans next contends that the PCR court erred in not finding his trial counsel was ineffective for failing to communicate with him. He maintains he suffered from mental illness and was suicidal at the time he entered into the plea, and had his trial counsel communicated with him, counsel would have discovered he was not competent to plead guilty. However, nothing in this record indicates that trial counsel or the trial court had reason to doubt that Hagans was mentally

competent. *See State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977) (noting there was no evidence in record to suggest a question of defendant's mental competence). The court conducted a detailed colloquy with Hagans prior to accepting his plea, wherein Hagans affirmed that he had had enough time to speak with his counsel about the charges and possible defenses. He affirmed he did not need any more time to speak with counsel. He further affirmed he was satisfied with the services of his counsel. After being sworn by the court, he answered "Yes, ma'am" when asked if he was acting voluntarily in asking the court to accept his guilty plea. He answered "No" when asked if anyone was forcing him to plead guilty. He answered "No" when asked if anyone had made any threats or promises to try to talk him into pleading guilty. Asked by the court if he was pleading guilty because he committed the crimes, Hagans responded:

> I am, and I want to take responsibility for the crimes. I did do them, and rather than going through trauma, there's an explanation. I had been in prison before from '87 to '91, and I've been out since '91, got off parole in '92. But my drug problem resurfaced. I would hope to run them concurrently, but if not, I did do the crime, so I have to face the music and do whatever you decide. I am guilty.

Hagans denied he was under the influence of alcohol, drugs, or any medication that would affect his ability to understand the guilty plea proceedings. After conversing with Hagans, the court stated on the record that Hagans "appears to be alert and attentive to this process. He appears to understand what I'm talking about, and he appears to be able to communicate with both the court and his counsel." Hagans did not inform the court otherwise, and the court went on to discuss with Hagans the factual bases of the charges to which he was pleading

guilty. At no time did Hagans alert the court or his counsel to any mental health issues. Prior to sentencing, Hagans made a statement to the court:

> I'm very sorry for what I did. It was like a haze in me. It was just that period I was unemployed. I have had substance abuse treatment. I graduated The Other Way treatment program . . . , and I've done everything well. Not making excuses. I do accept responsibility that I did this. I just want to go back and pay the price . . . .
> I've done a lot of thinking about it, and just being able to think plainly is the right thing to do. I am grateful . . . the prosecution didn't put the ongoing criminal conduct . . . . So I'm grateful to the prosecution and my lawyer that I can pay for these crimes but not real, real harshly. What I did, I did admit to that.

Clearly Hagans was able to communicate to the court his personal issues and reasons he believed he committed the crimes, as well as articulating his reasons for entering into the guilty plea. Moreover, Hagans had the opportunity at the PCR trial to establish he was mentally incompetent at the plea hearing or before, and he failed to do so. *See id.* We therefore find no merit to this claim and likewise conclude the PCR court did not err in deciding the issue adversely to Hagans.

Finally, Hagans claims the PCR court erred in not finding his trial counsel was ineffective for failing to fully investigate the matter. He complains that trial counsel declined to conduct depositions, and, had counsel done so, he "would have perhaps learned of advantages to his case and would have discovered whether [the State's witness] would testify, assert her right against self-incrimination, and/or would have learned that she was not a listed witness." He asserts his guilty plea was not entered into knowingly and voluntarily for this reason. Our supreme court has held "it is not always necessary for defense counsel to depose witnesses before trial." *State v. Williams*, 341 N.W.2d 748,

752 (Iowa 1983). We have already determined Hagans's argument that the State's failure to list a witness lacks merit. Beyond this argument, he discloses no reason why taking depositions was essential to the competent defense of his charges or what additional discovery might have revealed that would have prompted him to turn down the plea offer and stand trial. Hagans's claim that counsel failed "to investigate the matter" is "too general in nature" to allow us to address it or to preserve it for a second PCR proceeding. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). We therefore find no merit in this claim and likewise conclude the PCR court did not err in deciding the issue adversely to Hagans.

For the foregoing reasons, we affirm the PCR court's denial of Hagans's PCR application.

**AFFIRMED.**