# IN THE COURT OF APPEALS OF IOWA

No. 14-1087
Filed September 10, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TAMARIS QUINTEZ GARY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, George L. Stigler (guilty pleas) and Andrea J. Dryer (sentencing), Judges.

        Tamaris Gary appeals various convictions, based upon his guilty pleas, asserting claims of ineffective assistance of counsel.  **AFFIRMED.**

        Brian D.W. Spannagel of Boffeli & Spannagel, P.C., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Linda Fangman, Assistant County Attorney, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Tamaris Gary appeals various convictions, based upon his guilty pleas, asserting claims of ineffective assistance of counsel. We affirm.

### I. Background Facts and Proceedings.

From July 2013 to November 2013, Tamaris Gary was charged by seven separate trial informations with several different crimes. He was first charged with operating a motor vehicle while intoxicated (OWI) in June 2013, case number OWCR192182. Gary was next charged with having possessed marijuana, third offense, on July 14, 2013, case number AGCR192499. Gary was charged with driving while his license was revoked on three separate occasions in August 2013, case numbers SRCR193081, 417, and 269. In October 2013, Gary was charged by trial information with three separate counts for crimes committed September 27, 2013, case number FECR194127. Count I alleged Gary possessed marijuana with the intent to distribute as a habitual offender, and Count II alleged a drug tax stamp violation as a habitual offender. Count III charged Gary with driving while his license was revoked on that occasion. Finally, Gary was charged with disorderly conduct for throwing a bottle at a car, case number SMCR194920.[1]

In January 2014, Gary signed written guilty-plea forms in OWCR192182 and SRCR193081. In signing the forms, Gary admitted that he committed those charged crimes, he understood the maximum punishment and fines for each crime set forth in the form, he was pleading guilty "voluntarily and with full

---

[1] This charge was included in the plea agreement at issue here, but Gary does not challenge this conviction. Consequently, we do not address that conviction any further but for its inclusion in the overall plea agreement.

understanding and knowledge of [his] rights," and the court could rely upon the minutes of testimony for a factual basis for each plea. Paragraph twelve of both forms stated "I understand that upon my plea of guilty, the county attorney will recommend the following sentence," but the spaces provided thereafter to fill in the recommended sentence were left blank. Both forms stated Gary's guilty pleas were "conditioned on the court's concurrence."

In March 2014, Gary came before the court to enter oral guilty pleas to the remaining offenses pursuant to a plea agreement with the State, and the court conducted a plea colloquy with Gary. The court did not specifically ask Gary in its colloquy to give a recitation of his actions in committing each crime, nor did the court expressly ask Gary if he accepted the minutes of testimony for each charge as true. Rather, the court went through each charge with Gary, explaining to him the State's allegations in each crime and its associated penalties. The court asked Gary if he understood each charge and its penalties, and Gary answered affirmatively each time and indicated he did not have any questions. In a couple of instances, the court specifically asked Gary if he committed certain actions, such as, "[W]as the marijuana yours?" and "[D]id you have more than 42.5 grams of marijuana?" Gary answered affirmatively on each occasion. After this discussion, the court stated: "Based on the minutes and the statements made, I find there are factual bases to support those charges."

The court then discussed the plea agreement with the parties. The State explained its agreement to the court:

> In [FECR194127], . . . We are removing the habitual offender status at the time of sentencing. There will be a joint recommendation for five years in prison on Count I, five years in

prison on Count II, that they run consecutive to each other for a total of a [ten]-year prison term. That he be sentenced to $750 fine plus surcharge on each of those. . . . The prison sentence is not suspended. It would be imposed. He would have to pay court costs . . . .

. . . And on Count III he would have to pay the $1000 fine plus surcharge, court costs, . . . and he would . . . be sentenced to one-year in jail and that would run concurrent to his [ten]-year prison sentence.

In [AGCR192499], as an aggravated misdemeanor, there would be a joint recommendation for two years in prison. It would run concurrent with the [ten]-year prison sentence. So it would just be one [ten]-year prison sentence. There would be a $625 fine plus surcharge. . . .

On the two written driving while license revokeds, [cases SRCR193417 & 269,] I'm assuming he has whatever the plea agreement was for that in there. He would have to pay the $1000 fine. Any jail time we would suggest would run concurrent with his [ten]-year prison term.

And I think that's all the pleas we're here for, I think.

When asked if he agreed with the recitation, Gary's counsel stated:

Yes, Your Honor. It's my understanding that everything—to be honest with you, Your Honor, the only hammered-out time allotment that we came out with was the ten-year prison sentence and we just said everything else is going to run concurrent. We didn't come up with a specific number as far as how many years on each . . . of the others, and honestly with the written pleas, I just put [thirty] days down because it's not going to really matter.

The following exchange then occurred:

THE COURT: But the critical thing is he has agreed to that five-year plus five-year stacked?
[GARY'S COUNSEL]: Absolutely, Your Honor.
THE COURT: And the other matter is being concurrent. [Does the State] agree with that . . . ?
[THE STATE]: Yes.
THE COURT: Did you hear what the attorneys just said?
[GARY]: Yes, sir.
THE COURT: And do you have any questions of that?
[GARY]: No.
THE COURT: Did you understand it?
[GARY]: Yes.
THE COURT: What they said?
[GARY]: Yes. Yes, sir.

The court recited each charge and asked Gary to enter his plea in each case, and Gary pled guilty to each charge (AGCR192499; FECR194127, counts I, II, and III; SMCR194920; and SRCR193269, 417). The court noted Gary had already entered written pleas of guilty in SRCR193081 and OWCR192182. Following this colloquy, the court accepted Gary's guilty pleas, finding he understood "the rights available to [him]" and "the penalties attached" and that his pleas were "freely, voluntarily and intelligently made," with "a factual basis for each" offense.

At the end of the hearing, the State asked that Gary be sentenced in OWCR192182 and SRCR193081, the cases to which Gary pled guilty in January 2014. Gary asked that sentencing in those cases be continued so he could be sentenced for all of his convictions at once. The court asked if the sentences in those cases were going to be suspended, and the following exchange occurred:

> [THE STATE]: Judge, they're not going to be suspended. They're going to have one-year jail sentences imposed. He would go into custody.
> THE COURT: Let's see if we understand this. Because the one-year, as I understand it, yes, those are the penalties that are permitted, but if they're going to be run concurrent to the two five-year sentences that will be stacked, that at least has the potential, I don't know about the reality, but at least the potential of extending his actual sentence because he'll be sentenced today if we were to go with the State's point of view and then we'll come back in [thirty] days or [forty-five] days or whenever it is and he is sentenced on the other matters, and so theoretically at least he could do another [thirty] or [sixty] days awaiting sentencing that would be longer than ordinarily he would serve. Let's do them all at one time and just get everything out of the way at . . . the one hearing.

The court then asked Gary's counsel if there was anything else, and counsel responded in the negative. The hearing ended at that point.

Thereafter, Gary signed written guilty-plea forms in SRCR193417 & 269. By signing each form, Gary admitted that he committed the charged crime and that the court could rely upon the minutes of testimony for a factual basis for each plea. Additionally, following the statement "I understand that upon my plea of guilty, the county attorney will recommend the following sentence" in paragraph twelve of both forms, the following was written in: "Defendant shall serve [thirty] days in jail. The jail time shall run concurrent with the sentences in AGCR192499, [the other two driving-while-license-revoked convictions], OWCR192182, SMCR194920, and FECR194127." Like his other written guilty-plea forms, the forms stated Gary's guilty pleas were "conditioned on the court's concurrence." No written guilty plea was executed in either FECR194127 or AGCR192499.

In June 2014, Gary was sentenced on all of the charges. In FECR194127, the court sentenced Gary on Counts I and II to serve a term of imprisonment not to exceed five years on each count, and the court sentenced Gary to serve a one-year term for Count III. In AGCR192499, the court sentenced Gary to serve a term not to exceed two years. In OWCR192182, the State recommended Gary be sentenced to "one year in jail concurrent with the other cases" without any objection or comment by Gary or his counsel, and the court agreed, sentencing Gary to serve a one-year term. Finally, on the three driving-while-license-revoked charges in SRCR193081, 417, and 269, the court sentenced Gary to serve thirty days for each offense. The court also assessed to Gary fines and other related costs associated with each of the convictions. The

court ordered that Gary's two five-year sentences be served consecutively, and it ran all of his other sentences concurrent thereto.

Gary now appeals. He asserts his trial counsel was ineffective for permitting him to plead guilty because (1) there was an inadequate factual basis to support his pleas; (2) his guilty pleas were not made voluntarily and intelligently; and (3) the State breached its plea agreement and trial counsel should have objected to the breach. We address his arguments in turn.

## II. Discussion.

On appeal, a defendant generally cannot challenge the adequacy of a guilty plea proceeding if the defendant did not first assert the challenge in a motion in arrest of judgment. *See* Iowa R. Crim. P. 2.24(3)(a). However, an exception to this rule applies "when a defendant alleges trial counsel was ineffective for permitting him to plead guilty to a charge for which there is no factual basis and for failing to thereafter file a motion in arrest of judgment." *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). Accordingly, because Gary argues his counsel was ineffective for permitting his guilty pleas without establishing a factual basis, we may consider the claim on direct appeal if the record is adequate to make a determination; otherwise, the matter must be preserved for possible postconviction-relief proceedings. *See id.* We find the record here is sufficient.

To establish that his trial counsel was ineffective, Gary must prove by a preponderance of evidence that his trial attorney failed to perform an essential duty, and he was prejudiced as a result. *See Rhoades v. State*, 848 N.W.2d 22,

28-29 (Iowa 2014); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review is de novo. *See Rhoades*, 848 N.W.2d at 26.

### A. *Factual Basis for Pleas*.

Counsel breaches an essential duty if there is no factual basis to support the guilty plea but permits the defendant to plead guilty and waive the right to file a motion in arrest of judgment anyway. *See id.* at 29. In such cases, prejudice is presumed. *Id.* Nevertheless, establishing that a factual basis in the record exists to support the defendant's guilty plea does not require the record to contain "the totality of evidence necessary to support a guilty conviction." *Id.* (citation and internal quotation marks omitted); *see also Finney*, 834 N.W.2d at 62 (stating "evidence that the crime was committed beyond a reasonable doubt" is not necessary in determining if a factual basis exists to support a guilty plea). Rather, the record need only demonstrate the facts to support the elements of the offense to which the defendant pled guilty. *Rhoades*, 848 N.W.2d at 29; *Finney*, 834 N.W.2d at 62.

Gary does not argue on appeal that the entire record provides no factual bases supporting his guilty pleas; rather, he challenges what the "record" is for purposes of making that determination. Gary contends that because he did not expressly accept the minutes of testimony as true in each of his cases during his colloquy with the court, those minutes are not part of the "record" upon which a factual basis to support the plea could be found. "In other words," he argues, "if the defendant does not stipulate to the minutes of testimony, the minutes of testimony do not become part of the guilty plea record." We disagree.

In *State v. Finney*, a panel of this court found "Finney received ineffective assistance because defense counsel permitted him to plead guilty to attempted murder when there was not a sufficient factual basis in the record." No. 12-0010, 2012 WL 3027113, at *2 (Iowa Ct. App. July 25, 2012). Specifically, it found Finney's lone statement during the plea colloquy that he shot the victim was inadequate by itself to factually support the guilty plea. *See id.* Because the district court "did not articulate that it was relying on the minutes of evidence or any other source beyond Finney's statement in court to find a factual basis for the plea," the court found Finney's counsel ineffective. *Id.*

The Iowa Supreme Court disagreed and reversed the ruling on further review. *Finney*, 834 N.W.2d at 50-63. The court conducted a review of "the origins and development of guilty plea jurisprudence in federal law and in our own law, . . . pay[ing] particular attention to the multiple goals of the guilty plea colloquy and the difference between objective and subjective inquiries." *Id.* at 50. Following its comprehensive analysis, the court resolved:

> On a claim that a plea bargain is invalid because of a lack of accuracy on the factual-basis issue, the entire record before the district court may be examined . . . . Recourse to the entire record is appropriate because, unlike a claim of due process involuntariness, the relevant inquiry for purposes of determining the Sixth Amendment claim presented by Finney does not involve an examination of his subjective state of mind at the time the trial court accepted the plea, but instead involves an examination of whether counsel performed poorly by allowing Finney to plead guilty to a crime for which there was no objective factual basis in the record. The failure of the district court in this case to explain on the record the evidence supporting his finding of a factual basis is thus an omission unrelated to the substantive claim being made.

*Id.* at 62 (internal citations omitted). The court then looked to the entire record, including the minutes of testimony, which this court did not do in its opinion, and

the supreme court found there was a factual basis to support Finney's guilty plea. *See id.*

Consequently, that Gary did not expressly state he accepted the minutes of testimony as true is not relevant to a factual-basis challenge. Rather, following *Finney*, the appropriate inquiry here is whether Gary's counsel allowed him to plead guilty to crimes for which there was no *objective* factual basis in the record. *See id.* In making that determination, we must look to the entire record available to the court when it accepted the guilty plea and pronounced judgment, and the minutes of testimony are clearly included as part of that record, regardless of whether a defendant expressly states the minutes are true. Here, the court expressly stated it was relying on the minutes and Gary's statements during the colloquy to support the factual basis. *See id.* Gary's contention that the minutes cannot be considered must fail. *See id.*

Gary does not challenge that his crimes are not supported by the minutes of testimony to form the factual bases for his convictions; indeed, following our review of the entire record, we find the minutes provided in each case establish a factual basis for each of the crimes. Accordingly, Gary's attorney did not breach an essential duty in failing to file a motion in arrest of judgment challenging the factual basis for the plea.

### B. Voluntariness and Understanding of Pleas.

Gary next contends his guilty plea in OWCR192182 was not made voluntarily and intelligently because "the terms of the plea agreement were not properly disclosed on the record." That part of the written guilty-plea form providing for the county attorney's recommendation for sentence was left blank.

Consequently, Gary asserts his plea was involuntary and his trial counsel breached an essential duty and was thereby ineffective. He maintains it was represented at his March guilty-plea hearing that he was agreeing to a thirty-day sentence in OWCR192182, not a one-year sentence asked for by the State and imposed by the court at sentencing. He asserts he was prejudiced by the longer sentence. We disagree.

Unlike the factual basis analysis, a challenge to a guilty plea based upon voluntariness and understanding requires a determination as to whether the defendant understood, "among other things, the 'nature of the charge to which the plea is offered.'" *State v. Sutton*, 853 N.W.2d 284, 287 (Iowa Ct. App. 2014) (quoting Iowa R. Crim. P. 2.8(2)(b)). "In order to ensure a guilty plea is voluntarily and intelligently made, the court must articulate the consequences of the plea to the defendant." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). However, to establish prejudice, Gary must show he would not have pled guilty if he had known the agreement in OWCR192182 was for a one-year sentence instead of a thirty-day sentence. *See Ennenga v. State*, 812 N.W.2d 696, 708 (Iowa 2012).

Gary contends he believed he would be sentenced to thirty days on his OWI conviction, thereby rendering his guilty plea involuntary and unintelligent. Gary points to the blank space on his guilty plea form concerning the county attorney's recommendation for his sentence in that case, along with his counsel's statement at the March plea hearing that he "just put [thirty] days down," as the source of his alleged belief. However, the State expressly stated towards the end of the hearing that it was seeking a one-year sentence in OWCR192182,

and neither Gary nor his attorney stated otherwise. If Gary was truly caught unaware, he had forty-five days from the time of the March 2013 plea hearing to bring this issue to light through a motion in arrest of judgment.[2]

Moreover, the record reflects that the only agreement subject to concurrence by the court was that the sentences be run concurrent with each other. During the plea colloquy, Gary's attorney stated:

> [T]he only hammered-out time allotment that we came out with was the [ten]-year sentence and we just said everything else is going to run concurrent. We didn't come up with a specific number as far as how many years on each other—each of the others and honestly with the written pleas, I just put [thirty] days because it's not going to really matter.

Gary did not object to this explanation of the agreement. Iowa Rule of Criminal Procedure 2.10(1) states the counsel may agree to a "sentencing concession," which here was that the sentences be run concurrently. There was no agreement of the exact length of the sentences. Because the court granted concurrent sentences, there was no error.

In any event, even if Gary's counsel did have a duty to clarify Gary's sentence in OWCR192182, once the court ordered OWCR192182 to run concurrently as agreed, Gary cannot establish he was prejudiced as the court followed the plea agreement. On the record before us, Gary has failed to show his trial counsel was ineffective concerning his OWCR192182 guilty plea. However, we are not privy to the conversations between Gary and counsel and to the extent trial counsel led Gary to enter a plea that was not intelligently or

---

[2] Iowa Rule of Criminal Procedure 2.24(3)(b) requires a motion in arrest of judgment be filed not later than forty-five days after a plea of guilty.

voluntarily entered, we preserve such a claim for possible postconviction-relief proceedings.

### C. Plea Agreement Breach.

Similarly, Gary maintains the State failed to recommend a thirty-day sentence in the OWI case as agreed, and his attorney was ineffective in failing to challenge this claimed breach of the plea agreement. For the reasons stated above, we are not persuaded by this argument.

From the record, once Gary agreed to the two five-year consecutive sentences, we are unconvinced that the length of Gary's OWI sentence would have changed his decision to plead guilty because it was run concurrently with all the other charges. Gary has failed to show his trial counsel was ineffective for not challenging the alleged breach of his plea agreement.

### IV. Conclusion.

Because Gary failed to establish his trial counsel was ineffective, we affirm the court's convictions in the challenged cases.

**AFFIRMED.**