# IN THE COURT OF APPEALS OF IOWA

No. 17-1209
Filed June 20, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**YOSLEY BAEZ CORDERO,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble (guilty plea) and Robert J. Blink (sentencing), Judges.

Yosley Cordero appeals from his conviction on one count of conspiracy to commit forgery. **AFFIRMED.**

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Yosley Cordero appeals from his conviction on one count of conspiracy to commit forgery, a class "D" felony, in violation of Iowa Code sections 706.1, 706.3(2) (2016). Cordero contends his counsel rendered ineffective assistance by allowing him to plead guilty without a factual basis for the charge. Because the record establishes a sufficient factual basis for his plea, we affirm.

An ineffective-assistance-of-counsel claim may be reviewed on direct appeal only if the record is sufficient to resolve the claim; otherwise, it is preserved for postconviction-relief purposes. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). The record here is sufficient to resolve Cordero's claim. We review claims of ineffective assistance of counsel de novo. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). To show his counsel was deficient, Cordero must prove by a preponderance of the evidence that counsel failed to perform an essential duty and prejudice resulted. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

To determine if trial counsel failed in an essential duty by allowing a defendant to plead guilty when the charges lack a factual basis, the entire record before the district court may be examined. *See State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013). The examination of the defendant's statements and the minutes of evidence is appropriate to determine whether there existed an objective factual basis for a guilty plea.[1] *See id.*; *Schminkey*, 597 N.W.2d at 788. "At the time of

---

[1] Cordero states in his brief that, "It was never requested that the court take judicial notice of the minutes, so the court only had Cordero's statements during the guilty plea as a basis on which to establish Cordero's guilt." In fact, in finding a factual basis for the plea, the plea court relied upon Cordero's statements, the prosecutor's statements, *and* the minutes of testimony. In any event, we, as a reviewing court, consider the *entire* record before the plea court at the time of the guilty plea hearing. *See State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999).

the guilty plea, the record must disclose facts to satisfy all elements of the offense." *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). If no factual basis is found in the record for the charges the defendant has pled guilty to, then an essential duty has been breached and "[p]rejudice is inherent." *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014).

This case arises from an attempt to cash a forged check at a bank. The following can be gleaned from the minutes of evidence. Police were contacted by a bank employee who described a man attempting to cash a forged check. When police arrived at the bank, a man matching the bank employee's description was observed running in the parking lot and getting into a silver four-door sedan with Florida license plates. Police officers stopped the vehicle and detained the occupants, identified by their Florida driver's licenses as: Alfredo Penalver, Lazaro Taboada-Diaz, and Yosley Cordero. A subsequent search resulted in police discovering $1437.00 in cash on Taboada-Diaz. A hotel keycard was found on Cordero.

Police recovered the forged check and a fake Texas driver's license from the bank. The driver's license was in the name of "Aldo Espinosa," with a photo of Penalver. The forged check was on the account of "Ocean Moving and Storage Corp GA Account" and made payable to "Aldo Espinosa" in the amount of $6400. Bank employees stated that they had attempted to delay Penalver from leaving the bank once police had been contacted but that he had become suspicious and left the Texas license in the lobby when he ran outside prior to the police officers arriving.

While Penalver, Taboada-Diaz, and Cordero were being detained, a blue mini-van with Florida plates drove up. The three occupants got out. Emilio De La Paz Jr. and Pedro Lopez, said they were friends of the detainees, and Alejandra Gonzalez-Lopez advised officers that she was Taboada-Diaz's wife. The three were identified by their Florida driver's licenses. They were also detained and subsequently searched, resulting in the discovery of $5186.50 in cash on De La Paz Jr. and a hotel key found on Lopez from the same hotel as the key found on Cordero.

Police spoke to the owner of Ocean Moving and Storage Corp, who stated that he had not authorized the check in question. He also stated he had been the victim of several prior incidents of forged checks being cashed.

Subsequent investigation showed the six had stayed at a nearby hotel in three rooms under Lopez's name. Search warrants were obtained for the three hotel rooms, the two vehicles, as well as all of the detained individuals' cell phones. Inside one of the hotel rooms, a notepad was found containing practice signatures for "Aldo E," the same signature that was located on the fake Texas driver's license of "Aldo Espinosa." A separate notepad was found in one of the other rooms detailing what appeared to be a breakdown of the illicit proceeds from a forged check Alejandra Gonzalez-Lopez cashed in Minnesota. In the sedan's glove compartment, an additional five checks were found on the accounts of Ocean Moving and Storage Corp GA Account, Northstar Moving Transportation Co, and SERE LLC, all with the payee name of "Aldo Espinosa." The owners of Northstar and SERE were then contacted, and they also confirmed that the checks were fraudulent and had not been authorized. Police also searched the cell phones of

the six individuals. That search yielded a photo of Cordero with Gonzalez-Lopez and De La Paz Jr. taken August 4, 2016, at the same hotel where the search warrants had been executed. All of the evidence seized revealed a multi-state forged check operation conducted by the six.

Cordero was charged with five counts of forgery and one count of conspiracy to commit a felony (forgery)—all class "D" felonies. As a part of a plea deal, the State agreed to dismiss the five counts of forgery and the habitual offender enhancement in return for Cordero's guilty plea to the one count of conspiracy to commit forgery. At the plea hearing the district court engaged Cordero in a comprehensive colloquy. The relevant parts regarding the factual basis for Cordero's guilty plea follow:

> THE COURT: Well, what did you do?
> CORDERO: I accompanied Lazaro and Alfredo to the bank, and I helped them to commit the felony.
> . . . .
> THE COURT: What was going to happen at the bank?
> CORDERO: Alfredo was going to cash a check.
> . . . .
> THE COURT: Well, was it the check purporting to be a check of Ocean Moving & Storage Corporation, GA?
> CORDERO: Yes.
> THE COURT: And did you know that at the time?
> CORDERO: Yes.
> THE COURT: Did you or Alfredo or—who was the other one? Who was the other guy?
> CORDERO: Alfredo Penalver and Lazaro Taboada.
> THE COURT: Did you or Alfredo or Lazaro have any authority to cash that check?
> CORDERO: No.
> . . . .
> THE COURT: Then what happened?
> CORDERO: He got the check. We went to the bank, and maybe he had some problems there. Then he came out, and we got into the car. And then we were driving away. The police came and stopped us.
> THE COURT: What were the problems at the bank?

CORDERO: I don't know what the problem was, but maybe the girl who was working at the bank thought it was not legal.

. . . .

THE COURT: Okay. So before you went to the bank with Lazaro and Alfredo, did the three of you enter into an agreement that one or all of you were going to commit this crime of forgery?

CORDERO: Yeah.

. . . .

THE COURT: Were you a lookout?

CORDERO: Yes.

. . . .

THE COURT: Was it a blank check?

CORDERO: He—yes. He filled it out. He filled it out.

THE COURT: Alfredo did that?

CORDERO: Yes.

THE COURT: And you knew he was going to do that or agreed that he should do it?

CORDERO: Yes.

THE COURT: When you all committed this crime, did you – did you specifically intend to injure or defraud this company, Ocean Moving & Storage Corp., by taking money that you were not entitled to?

CORDERO: Yes.

On appeal, Cordero argues that "the record is devoid of evidence to support a conviction of conspiracy, and is therefore insufficient." Conspiracy is statutorily defined as:

1. A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:

a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit the crime.

b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

. . .

3. A person shall not be convicted of conspiracy unless it is alleged and proven that at least one conspirator committed an overt act evidencing a design to accomplish the purpose of the conspiracy by criminal means.

Iowa Code § 706.1.

A lesser burden rests with the State to establish the factual basis to support a guilty plea than proving guilt beyond a reasonable doubt at trial. *See State v. Sanders*, 309 N.W.2d 144, 145 (Iowa Ct. App. 1981). The factual basis for a guilty plea only requires that the record, taken in its entirety, "demonstrate[s] facts that support the offense." *State v. Ortiz*, 789 N.W.2d 761, 767-68 (Iowa 2010). At the time of the guilty plea, the record only must disclose facts that satisfy all elements of the offense. *See Rhoades*, 848 N.W.2d at 29.

Cordero suggests the evidence is insufficient to show his intent to enter into an agreement to conspire to commit forgery. *See* Iowa Code § 706.1(1); Iowa Crim. Jury Instruction 600.1. "Without proof of any involvement from which to infer agreement, this essential element of the offense rests on nothing but conjecture and speculation." *State v. Speicher*, 625 N.W.2d 738, 743 (Iowa 2001). It is clear from the record that Cordero was with and knew Penalver was forging checks. Cordero affirmatively responded to the district court's question during the colloquy that before the three men went to the bank, they did "enter into an agreement that one of you . . . were going to commit this crime of forgery." Cordero's extended statements that he accompanied the co-conspirators to the bank "to help them commit the felony" further support a factual basis for intent. Cordero stated he was in the sedan to serve as a lookout. Cordero's statements and the record facts sufficiently provide a factual basis for the intent element. *See State v. Philo*, 697 N.W.2d 481, 486 (Iowa 2005); *see also Rhoades*, 848 N.W.2d at 31 (requiring that a defendant acknowledge facts consistent with the crime charged and pled guilty to).

Cordero also suggests the facts do not support the "overt act" requirement. *See* Iowa Code § 706.1(3). We disagree. To sustain a conspiracy conviction requires proof "that at least one conspirator committed an overt act." *Id.* There is no question that one of Cordero's confederates committed an act of forgery. The notepad found in the hotel room that Penalver was staying in contained the practice signatures of "Aldo E." It is undisputed that Penalver tried to pass the forged check at the bank using a fake ID. The record evidence supports a finding that at least one of the conspirators performed an overt act designed to accomplish the purpose of the conspiracy by criminal means.

Any remaining arguments raised by Cordero on appeal are deemed without merit, and we therefore do not specifically address them in this opinion.

Because the record establishes a factual basis for Cordero's plea, Cordero's attorney was not ineffective in allowing him to plead guilty to conspiracy to commit forgery. Cordero's arguments not specifically addressed in this opinion are found to be without merit. We therefore affirm Cordero's conviction.

**AFFIRMED.**