# IN THE COURT OF APPEALS OF IOWA

No. 24-0331
Filed March 19, 2025

**RYAN PATRICK McDONALD,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

　　An applicant appeals the denial of postconviction relief claiming ineffective assistance of counsel. **AFFIRMED.**

　　Tiffany Kragnes, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

　　Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

Ryan McDonald pleaded guilty to second-degree murder for the January 2019 killing of Adam Angeroth. In this appeal of the denial of postconviction relief (PCR), McDonald alleges that his plea counsel was ineffective in two ways. First, he claims counsel allowed him to plead guilty without a factual basis supporting the plea. Second, he claims that counsel failed to provide him with additional minutes of testimony, rendering his guilty plea unknowing and involuntary. On our review, we affirm the denial of relief.[1]

## I.      Facts and Prior Proceedings

Police discovered Angeroth's body wrapped in layers of bedding and shoved inside a closet in his apartment. His wrists and ankles were bound with zip ties. And his head was wrapped in trash bags and duct tape. The medical examiner found blunt-force and sharp-force trauma injuries but determined that Angeroth died of asphyxiation. The State charged McDonald and three other men with first-degree murder.[2] After reaching an agreement with the prosecution, McDonald pleaded guilty to second-degree murder.[3]

McDonald's written guilty plea included a stipulation that the district court could use the minutes of testimony to establish a factual basis for his guilt. At the plea hearing, McDonald agreed that no one threatened him or made promises to

---

[1] We generally review PCR rulings to correct errors at law. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But when an applicant alleges ineffective assistance of counsel—a constitutional claim—our review is de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

[2] This offense is a class "A" felony in, violation of Iowa Code sections 707.1, 707.2(1)(a), and 707.2(1)(b) (2019).

[3] This offense is a class "B" felony in violation of sections 707.1 and 707.3.

obtain his guilty plea; he was pleading guilty voluntarily; he had enough time to consult with his attorney and was satisfied with his attorney's services; and he understood the rights he was waiving by pleading guilty. He also conceded that he would be convicted at trial if the witnesses testified according to the minutes; the court could use those minutes to determine a factual basis; and he was pleading guilty for the benefit of the bargain.

The district court accepted McDonald's plea, finding that the minutes established a factual basis for his guilt. McDonald waived his right to move in arrest of judgment and requested immediate sentencing. The court sentenced him to a term of up to fifty years in prison with a thirty-five-year mandatory minimum. McDonald did not file a direct appeal.

McDonald filed a pro se application for PCR in December 2019. In September 2022, he filed an amended application alleging two ineffective-assistance-of-counsel claims: (1) for allowing him to plead guilty without a factual basis, and (2) for failing to provide him with additional minutes of testimony containing a co-defendant's proffer statement.[4] At the PCR trial, the district court heard testimony from McDonald and admitted several exhibits, including the minutes of testimony and the deposition of McDonald's plea counsel.

The district court denied relief in February 2024. First, the court found that the minutes established an objective factual basis for McDonald's guilty plea to second-degree murder, so plea counsel did not breach a duty by allowing

---

[4] X.S.-C.'s proffer statement was taken before a court reporter in July 2019. At the beginning of the transcript, X.S.-C. agreed to explain everything he knew about Angeroth's death. In return, X.S.-C. did "hope that there would be some kind of favorable outcome" for himself but swore that he had not been promised anything.

McDonald to enter the plea. Second, the court found that—while plea counsel may not have given McDonald a physical copy of the additional minutes—credible evidence showed that counsel discussed the co-defendant's proffer statement with McDonald before he pleaded guilty. McDonald's plea counsel therefore breached no duty. The court also concluded that McDonald failed to demonstrate he would not have pleaded guilty if he had received a copy of the additional minutes. So the guilty plea was knowing and voluntary, and even if counsel erred, McDonald failed to prove prejudice. McDonald appeals that ruling.

## II. Analysis

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Iowa Constitution guarantee criminal defendants the right to effective assistance of counsel. *Smith v. State*, 7 N.W.3d 723, 725–26 (Iowa 2024). To prove ineffective assistance, McDonald must show by a preponderance of the evidence that his counsel breached an essential duty and prejudice resulted. *Id.* at 726. Failure to prove either a breach or prejudice defeats his claim. *Id.*

On the duty prong, McDonald must show that his counsel did not meet the performance standard required of a reasonably competent attorney. *See id.* As for prejudice, McDonald must show there is a reasonable probability that, but for his attorney's unprofessional errors, he "would not have pleaded guilty and would have insisted on going to trial." *See Sothman*, 967 N.W.2d at 523 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

### A. Factual Basis for Guilty Plea

McDonald first claims that his counsel was ineffective for allowing him to plead guilty without a factual basis for the plea. "It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis." *State v. Finney*, 834 N.W.2d 46, 54 (Iowa 2013); *see also* Iowa R. Crim. P. 2.8(2)(b) ("The court shall not accept a guilty plea without establishing that the plea is made voluntarily and intelligently and has a factual basis. . . ."). "If trial counsel permits a defendant to plead guilty and waives the defendant's right to file a motion in arrest of judgment when there is no factual basis to support the defendant's guilty plea, trial counsel breaches an essential duty." *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). We presume prejudice if such a breach occurs. *Id.*

The court may determine whether a factual basis supports a guilty plea through "(1) inquiry of the defendant; (2) inquiry of the prosecutor; (3) examination of the presentence report; or (4) reference to the minutes of testimony." *State v. Hightower*, 587 N.W.2d 611, 614 (Iowa Ct. App. 1998). The record must reveal facts to support all elements of the offense, but it "does not need to show the totality of evidence necessary to support a guilty conviction." *State v. Ortiz*, 789 N.W.2d 761, 767–68 (Iowa 2010). This determination "is an objective inquiry that has nothing to do with the state of mind of the accused, but everything to do with the state of the record evidence." *Finney*, 834 N.W.2d at 55.

McDonald contends that "[w]hile the district court utilized the Minutes of Testimony to help establish a factual basis for the guilty plea, trial counsel was aware of McDonald's continual maintenance of his innocence." And he asserts

that "counsel had an essential duty to not allow McDonald to plead guilty to an offense that McDonald stated he did not commit."[5]  Thus, McDonald claims that his counsel breached an essential duty and prejudice resulted because he "would not have entered a guilty plea and would have chosen to go to trial and further, had McDonald gone to trial, he would have been found either not guilty or guilty of a [lesser] included offense in light of the evidence produced by the State."

The State urges that McDonald's claim fails because "he never explains why the minutes of testimony do not offer a factual basis for his plea."  And, according to the State, the record belies McDonald's suggestion that counsel forced him to plead guilty.  We agree.  Both in his written plea and in his plea colloquy, McDonald stipulated to the court using the minutes of testimony to establish a factual basis for his guilt.  And McDonald agreed that he did not face threats or promises but pleaded guilty voluntarily and after consulting with his attorney.  He professed then to be satisfied with his attorney's representation.  He also acknowledged that he understood the rights he was waiving and was pleading guilty for the benefit of the bargain.

In denying McDonald's PCR application, the district court noted that second-degree murder "does not include the elements of specific intent or premeditation required to prove murder first degree."  The court explained:

> [T]here is ample support to find that [McDonald] and the co-defendants planned to harm the victim, that they used weapons and a knife to strike the victim's head and body, that the victim tried to defend himself, and that the victim died after their assault.  The fact

---

[5] McDonald's plea counsel acknowledged that "Ryan wanted to defend the case and was denying any culpability."  But counsel believed there was a factual basis for McDonald's guilty plea because "in the minutes of testimony witnesses placed him in the apartment and engaging in assaultive conduct" toward the victim.

that there was also exculpatory evidence contained within the minutes . . . does not negate the use of the minutes to find a factual basis. The state of the record evidence supports an objective finding that there was a factual basis for McDonald's guilty plea.

Thus, the court concluded that "McDonald's plea counsel cannot be found to have breached any essential duty for allowing McDonald's guilty plea."

We reach the same conclusion as the district court. The minutes showed that McDonald was in the victim's apartment with the three co-defendants in the hours before the murder, and they "talked about teaching [the victim] a lesson." Soon after the victim returned to the apartment, one of the co-defendants, X.S.-C., attacked him. The others joined in. A woman who left the apartment during the attack saw McDonald "kicking or stomping on" the victim, who was on the floor screaming. The woman waited outside for "quite a while" before she saw McDonald leave with another co-defendant. That co-defendant told the woman: "Things got out of control and we killed him." What's more, X.S.-C. said that McDonald repeatedly hit the victim with either a bat or a crowbar, and the victim's "whole face"—including his nose and mouth—was covered with duct tape when McDonald left the apartment. The victim died of asphyxiation, and his head was wrapped in duct tape when police discovered his body. And McDonald admitted to police that he was in the apartment when the victim came home.

That record provided a sufficient factual basis underlying McDonald's plea to second-degree murder. *See* Iowa Code §§ 707.1, 707.3. Because there was an objective factual basis supporting McDonald's culpability, counsel did not breach an essential duty by allowing him to plead guilty.

**B. Additional Minutes of Testimony**

Second, McDonald claims that counsel failed to provide him with additional minutes of testimony containing X.S.-C.'s proffer before the plea hearing. McDonald alleges that this error rendered his guilty plea unknowing and involuntary. To succeed on his ineffective-assistance claim challenging the voluntariness of his guilty plea, McDonald must show that he would not have pleaded guilty but for counsel's breach of duty. *See Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011).

At the PCR trial, McDonald testified that he didn't know about X.S.-C.'s proffer until after he pleaded guilty. McDonald believed that the statement would have "helped [him] substantially" at trial because X.S.-C. was "not . . . a credible witness." And McDonald claimed that he "would have stated yes, we were gonna go to trial" if counsel had provided the statement to him. In his deposition, McDonald's counsel testified that he didn't "recall if [he] left copies of the discovery at the jail for Mr. McDonald because it was so voluminous in this case." But counsel said that he "did discuss anything that was filed" with McDonald. And counsel insisted that he discussed X.S.-C.'s proffer statement with McDonald "both at the jail and as well as at the courthouse." Counsel also explained that, when McDonald decided to plead guilty, he was aware "that [X.S.-C.] had flipped," and that "he was going to testify that Mr. McDonald was involved in the assault of Mr. Angeroth."[6]

---

[6] The State's plea offer for second-degree murder was set to expire at the beginning of depositions. McDonald entered his written guilty plea on the day of X.S.-C.'s scheduled deposition.

On appeal, McDonald argues that counsel breached his "duty to keep McDonald informed of evidence in his case." McDonald maintains that counsel failed to give him the additional minutes containing X.S.-C.'s proffer, and he "had no knowledge of this information" when he pleaded guilty. He contends that while X.S.-C. would have testified to McDonald's involvement, the co-defendant also admitted using "Xannies," meth, and marijuana on the day of the murder. So, according to McDonald, X.S.-C. had "credibility problems." But X.S.-C. also said that "when McDonald left, the victim was alive." Thus, McDonald urges that he "was prejudiced by his counsel's failures" because "he lacked very important information as it related to his decision whether to plead guilty or go to trial."

The State counters that McDonald failed to prove either a breach of duty or prejudice. First, the State contends the record supports the district court's finding that "plea counsel discussed [X.S.-C.'s] testimony with McDonald at the jail and at the courthouse before depositions were scheduled." And because McDonald does not challenge that finding, according to the State, he cannot prove a breach of duty. Second, the State alleges that McDonald failed to adequately argue prejudice. *See State v. Myers*, 653 N.W.2d 574, 578–79 (Iowa 2002) (finding defendant's "conclusory claim of prejudice, that she 'was ready to insist on going to trial,' is not a sufficient assertion of prejudice").

Finally, the State argues that McDonald cannot prove prejudice. The State emphasizes that McDonald faced a life sentence if convicted of first-degree murder, but by pleading guilty to second-degree murder, he could be released from prison after thirty-five years. The State also points out that—on top of other incriminating evidence—"[X.S.-C.'s] expected testimony included [McDonald]

hitting the victim with a crowbar or baseball bat and being present as the co-defendants duct taped the victim." Thus, the State maintains that McDonald's "claim he would have gone to trial if he had known about [X.S.-C.'s] damning testimony because [X.S.-C.] was using drugs strains credulity."

Even assuming counsel breached an essential duty, we conclude that McDonald failed to show there was a reasonable probability that he would not have pleaded guilty if he had received the minutes containing X.S.-C.'s proffer.[7] True, some of the proffer was exculpatory to McDonald. For instance, X.S.-C. acknowledged that he was under the influence of drugs at the time of the murder. And he stated that the victim "was conscious" when McDonald left the apartment "after like ten minutes of what was happening." But X.S.-C.'s statement also implicated McDonald in the murder. He testified that McDonald, wielding a bat or a crowbar, "was getting hits and just backing up, hitting [the victim] . . . and then telling him, 'Shut up,' because [the victim] was screaming." X.S.-C. also described how the co-defendants "basically wrapped [the victim's] whole face with two rolls of duct tape" while McDonald was present.

On this record, McDonald failed to demonstrate that his guilty plea was unknowing or involuntary. Nor has he proven prejudice from counsel's alleged errors. We affirm the denial of relief.

**AFFIRMED.**

---

[7] The district court found that McDonald's "self-serving statements that he would have gone to trial for first degree-murder if he had received a physical copy of [X.C.-C.'s] deposition are not credible." On our review, we give weight to that credibility finding. *See Ledezma*, 626 N.W.2d at 141.